```
 1                  UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF FLORIDA
 2                         MIAMI DIVISION
                     CASE NO. 24-CV-21119-RAR
 3

 4   DARRYL PAYNE,                        Miami, Florida

 5              Plaintiff,                June 6, 2024

 6         vs.                           10:21 a.m. - 11:02 a.m.

 7   ESSENTIAL MEDIA GROUP, LLC, et al.,

 8              Defendants.              Pages 1 to 42

 9   _____

            ORAL ARGUMENT ON DEFENDANTS' MOTION TO DISMISS
10          BEFORE THE HONORABLE RODOLFO A. RUIZ, II
                  UNITED STATES DISTRICT JUDGE
11

12   APPEARANCES:

13

14   FOR THE PLAINTIFF:         TERRY M. SANKS
                                BEUSSE SANKS, PLLC
15                              157 New England Avenue
                                Suite 375
16                              Winter Park, Florida 32789

17   FOR THE DEFENDANTS:        RICHARD C. WOLFE
                                WOLFE LAW MIAMI, P.A.
18                              175 SE 7th Street
                                Suite 2410
19                              Miami, Florida 33130

20   STENOGRAPHICALLY REPORTED BY:

21
                                ILONA LUPOWITZ, RMR, CRR
22                              Official Court Reporter to:
                                The Honorable Rodolfo A. Ruiz, II
23                              United States District Court
                                Southern District of Florida
24                              400 North Miami Avenue
                                Room 11-2
25                              Miami, Florida 33128
                                (305) 523-5737
```

```
 1                (Call to the Order of the Court.)

 2           THE COURT:  We are here in Case No. 24-21119.  This is

 3      the matter of Payne versus Barwick, et al.

 4           Let's get appearances please, beginning with

 5      plaintiff's counsel.

 6           MR. SANKS:  Terry Sanks, from Beusse Sanks, on behalf

 7      of the plaintiffs.

 8           THE COURT:  All right.  Good morning, Mr. Sanks.

 9           And on behalf of Barwick?  Really, it's the Essential

10      Media Group, Rama Barwick, Paul Klein, Sharon Klein, and The

11      Orchard Enterprises.

12           MR. WOLFE:  Good morning, Your Honor; Richard Wolfe.  I

13      represent all the defendants.

14           THE COURT:  All right.  Good morning, Mr. Wolfe.

15           So we're here today to address the motion to dismiss

16      that has been filed by the defendants.  There's a couple of

17      arguments we're going to work our way through this morning.

18      Some of them are a little more pleading centric, and deal with

19      the adequacy of the allegations, and then one in particular, I

20      think, is a little more legal in that we're going to talk about

21      the statute of limitations argument raised by the defense.

22           I think the easiest way to go about this, Mr. Sanks, is

23      just to jump into the structure of the complaint.  I understand

24      that you take an issue with the allegation that this has been

25      framed as a shotgun complaint.
```

1          Now, I will tell you that I've poured through the

2   complaint quite a bit, and I think we do have, at least as what

3   I can see, as one, quote-unquote, "shotgun problem," and that's

4   what we know as the fourth category of shotgun pleading in

5   *Weiland*, which is our seminal case from the Eleventh Circuit.

6   And that is, when we assert, quote, "multiple claims against

7   multiple defendants without specifying which of the defendants

8   are responsible for which acts or omissions, or which of the

9   defendants the claim is brought against."  That's the one

10  category, if you will, of shotgun pleading, that worries me.

11         I'm looking here, in front of me, at the complaint; in

12  particular, paragraph 65 through 68, 89 through 93 of the

13  amended complaint -- Docket Entry 14, I believe -- and I can't

14  necessarily figure out what defendant of our four or five

15  defendants here engaged in which specific acts or omissions.

16         So I'll just read you an example.  Paragraph 43 of the

17  complaint says:  "In 2024, plaintiff learned that defendants,

18  individually and/or collectively, have illegally copied,

19  displayed, and made available for download, the Copywrited Work

20  - without authorization - on the music platform, Spotify."  The

21  problem is, I can't figure out, from that allegation -- I think

22  Mr. Wolfe shares the same concern -- who did what.

23         Was that really Rama Barwick?  Was it the Kleins?  Was

24  it The Orchard?  I can't really put my finger on who did what.

25         So can you address that?  I mean, again, I will give

```
 1    you leave to amend to correct this flaw, but you've maintained
 2    that I should be able to figure out, from this pleading, who
 3    committed what in the complaint, and I'm struggling with that.
 4           Do you want to address that?
 5           MR. SANKS:  Yes, Your Honor.  I guess to start with,
 6    before I touch on addressing that, today was the day we had an
 7    opportunity to amend our claim -- or our complaint, and we
 8    actually were going to file something.  And then we opted,
 9    let's go to this hearing, and let's see where you want to go
10    with this --
11           THE COURT:  Okay.
12           MR. SANKS:  -- before we file.  So we're hoping we have
13    at least some more time.  I know in the order -- it's at
14    Docket 22 -- the order itself said June 6th; yet, the email
15    notice said July 6th.  So we were a little confused, but we
16    were going with your order on that.
17           THE COURT:  For sure.  And I will tell you this:  No
18    matter what, we're going to have to address the statute of
19    limitations argument that I know Mr. Wolfe believes cannot be
20    cured by amendment.
21           But putting that aside for a minute, certainly, no
22    matter what, you will be granted leave to amend the pleadings,
23    and the issues I'm addressing today, and we can decide and talk
24    about how long you need on that.  But this particular issue
25    would certainly be one that I would hope we could amend and
```

```
 1    parse out who did what.

 2          So do you agree with me, that we can at least put a

 3    finer point on that?

 4          MR. SANKS:  I would prefer it so that we don't -- we're

 5    not here again.

 6          THE COURT:  Certainly.  For judicial economy and to

 7    help you-all out, I would agree.  I think it's the right call

 8    because -- I know you cited this BWP case for me, but I think

 9    that even in the BWP Media case, there was at least a little

10    more nuance and explanation.

11          Here, when we talk about -- I point out, for example --

12    and I'll put this in a brief order for you.  But this second

13    part, just by way of example, paragraph 91, quote, "defendants

14    individually and/or collectively had the right and ability to

15    supervise the infringing conduct committed, as each had the

16    right and ability to ensure proper authorization."  That's the

17    kind of thing that I'm worried about.  It's pretty conclusory.

18          As far as I can tell, we can't just say every defendant

19    engaged in every incident of vicarious infringement and direct

20    infringement.  It just puts Mr. Wolfe in a position to not know

21    who committed what infringing conduct.

22          So if we're going to go back and amend this, can you

23    make sure that we at least identify who is responsible for

24    what?

25          MR. SANKS:  I think why we stated it the way we stated
```

```
1    it -- and I apologize for the language we used.  I'm also a
2    patent attorney, and that's some of the language we use in
3    writing patent claims.
4          So we state it that way because, at this point, we
5    haven't taken discovery so we don't know exactly who is
6    controlling.  We know there are three member managers.  We
7    don't know who has more control over Essential than the other
8    two.  So that's why we stated it the way that we stated it.  We
9    believe that once we get into discovery, we would -- all that
10   would bear out.
11         THE COURT:  And I definitely don't want to have you
12   leave court thinking that we're going to raise the pleading
13   burden.  Right?  I agree with you.  We've got to get through
14   Twombly.  We need enough to state a viable claim.  So I don't
15   want you to think heightened pleading standard here.
16         I think that just a little bit more, though, in terms
17   of -- even if it is, quite frankly, that you want to attribute
18   the same conduct to everyone, there just needs to be a little
19   more of a fleshing out of that because, as it's written now,
20   everyone is just lumped in together.
21         So, for example, if we get through discovery later, and
22   we find that someone, for example, is not going to be held
23   responsible for infringement, by parsing out the counts, we can
24   do partial summary judgment, or we can try to parse out who's
25   liable for what.
```

1          So one of the things I'll tell you is -- as you're

2    pointing out to me, the discovery might assist you.  And I

3    don't know how much you know at this stage, but there's kind of

4    a failure to delineate the relationships a little bit, right,

5    in the sense of -- between Essential and Orchard and between

6    Orchard and each individually named defendant.

7          So that's been a challenge for me, to understand those

8    relationships.  It sounds like you may have some idea, based on

9    the member manager, et cetera, and maybe we can add that in.

10   I'm not asking you to have an exact blueprint of it, but my

11   hope is we could amend that.

12          MR. SANKS:  All right.  Our current --  again, we

13   didn't file --

14          THE COURT:  But you have a draft, though, right?

15          MR. SANKS:  We're up to 53 counts.  We have separated

16   each count per individual.

17          THE COURT:  That helps a lot.

18          MR. SANKS:  Arguing even in the alternative because,

19   again, at this point we do not know.

20          THE COURT:  That's fair to me.  That's fine.

21          Let me ask you, while we're on this subject -- because

22   I think you already have an amendment in progress -- there's an

23   issue here on the vicarious infringement claim.  Mr. Wolfe has

24   pointed out Count 3 should be dismissed, page 5 through 8 of

25   his motion.

1          I think we all agree, by the way, that the Eleventh

2     Circuit has made it clear that you have to have the right and

3     ability to supervise the infringing activity, and you must have

4     a direct financial interest.  Those are the two requirements.

5     And we need to have some allegations, for example, when it

6     comes to direct financial interests, that the defendant

7     profited directly from the infringing activity.

8          In the draft that you're currently putting together,

9     I'm hopeful that we will have some amendment as to a little bit

10    of the conclusory language in Count 3.  At least as it's worded

11    right now, it just simply says that defendants obtained a legal

12    profit, which is alleged in the infringements, but I don't have

13    anything in there about financial interest or defendant's role

14    in the alleged infringement.  And I think -- and I remember

15    going back -- your response actually does start to add detail

16    concerning the financial interests of The Orchard defendant.

17    But, of course, I can't consider that by way of a response.  So

18    if it's in the actual complaint, certainly, that would clarify.

19          Is that something that you're going to add?

20          MR. SANKS:  That is something we're going to add.

21          Also, in Mr. Wolf's motion, he was specific about The

22    Orchard not being -- their vicarious liability count, we're

23    actually removing that.

24          THE COURT:  Very good.  So you've gone a little step

25    ahead of me on that, as well.

1          I think this is a little bit of the same point, and

2    maybe this has already been cured:  You pointed out, in page 7

3    of your response, this issue with The Orchard as to vicarious

4    liability.  But I take it that you're going to clean up a

5    little bit about the right to supervise or control because

6    that's one of the issues.  You've pointed out this relationship

7    between Essential and The Orchard, but I do definitely need a

8    little more supervision, or control element, that you need for

9    vicarious infringement, that second element.  I would need

10   something like that fleshed out, and that's something you're

11   able to do?

12          MR. SANKS:  Yes, Your Honor.

13          THE COURT:  Okay, excellent.

14          MR. SANKS:  Again, like I said, with respect to The

15   Orchard we're taking them out of --

16          THE COURT:  So that's not an even an issue.

17          So Mr. Wolfe, before we get to the issue, more

18   particularly, about the statute of limitations, are you

19   satisfied -- it sounds like I think we have a game plan here on

20   an amendment.  Mr. Sanks has already taken care of a few of

21   these concerns, and I want to give him leave to do so.

22          We're going to talk now about the

23   statute-of-limitations defense that you believe cannot be

24   remedied by amendment, but I want to make sure that I've

25   covered all the pleading sufficiency arguments you've raised

1    that I think Mr. Sanks is going to address.

2         MR. WOLFE:  Thank you, Your Honor.  Last night I filed

3    a notice of supplemental authority.

4         THE COURT:  I saw that.

5         MR. WOLFE:  It's a case that I'm litigating in the

6    Central District of California.  It's the biggest copyright

7    case in the country right now.

8         THE COURT:  Bigger than *Nealy v. Warner Brothers*?

9         MR. WOLFE:  Bigger than *Nealy*, and I'll tell you why.

10        THE COURT:  By the way, inside joke.  I was on *Nealy*,

11   and the Supreme Court disagreed with me.  So I'm reliving

12   *Nealy*.

13        MR. WOLFE:  But we agreed with you.

14        THE COURT:  I'm really glad you said that.  Because

15   I've been telling everybody --

16        MR. WOLFE:  You know, I'm on *Nealy* now too.

17        THE COURT:  I know.  But I'm just saying, I'm glad that

18   someone will defend me.  Because I keep telling everybody, I

19   got three votes.  Technically, it's six, three.  We had a

20   running bet that it was going to be nine, zero, so I did okay.

21        MR. WOLFE:  So let me explain why I think *Cleveland*

22   *Constantine Browne* is on point and why I would urge Mr. Sanks,

23   when he amends, to leave off not only The Orchards, but the

24   three individuals.

25             As I was saying, what that case is about is, the

1    plaintiff has sued 600 defendants over 1,700 copyrights.  In

2    that case, I represent a who's who of Latin music, from Maluma

3    on down.  And at page 35 of the opinion, it came out -- they

4    followed the law that I've cited, color and sound, primarily,

5    being the case.  And Mr. Sanks has to give very detailed

6    pleading as to the three individuals.

7            And Your Honor, I've expressed to him, essential is the

8    company.  If everything that he says is right, essential is the

9    proper defendant.  It's a prominent company.  I've represented

10   them for 30 years.  I had hair when I started representing

11   them.  They have 80,000 recordings.

12           So to bring in the owners of the company is really

13   unnecessary, and it creates a whole bunch of litigation that,

14   quite frankly, doesn't benefit him.  It doesn't give him a

15   collectable defendant because, if everything he says is right,

16   he has a collectible defendant.

17           So I would urge him, rather than guessing about who did

18   what -- and Your Honor is absolutely correct.  They have to

19   prove and they have to plead that each one of these individuals

20   were directly involved in the alleged infringing activities,

21   and they all have a direct financial interest.  And being the

22   owner of the company is an indirect financial interest.  If the

23   company's profitable, and it pays them a profit, distribution,

24   that's an indirect distribution, and it doesn't satisfy the

25   requirements on the law.

```
1         So I would urge Mr. Sanks, when he re-pleads, if we get
2    there -- and we're going to deal with the issue of the statute
3    of limitations -- to think long and hard about that because
4    we're going to have a whole bunch of litigation that, in my
5    opinion, is unnecessary.
6         THE COURT:  Yeah, I looked at it last night.  I saw
7    page -- I think, really, it's pages 35 to 37 --
8         MR. WOLFE:  That's where it starts.
9         THE COURT:  -- where it really starts.  And there's a
10   pretty good discussion about the control element of vicarious
11   copyright infringement.  Certainly, there's some good language
12   in here, and it deals with, like we're dealing with today, some
13   pleading standards, under Rule 8, to try to explain how to
14   sufficiently allege a viable claim for that within Rule 8.  So
15   we're going to need some allegations there just to kind of
16   parse out that direct versus vicarious liability.
17        So I would agree.  Certainly, Mr. Sanks, as you're
18   going through an amendment, you know, this has some additional
19   guidance that I think is -- at least, as I read it, pretty in
20   line from what I've seen from my circuit.  So certainly, I
21   would encourage that if we can try to track this a little bit,
22   in its guidance, it's probably a good thing.  So we'll take a
23   look at that.
24        MR. WOLFE:  And Your Honor, you're right.  Page 35
25   through 40 were in my favor, but pages 1 through 35, not so
```

 1    much.

 2              THE COURT:  Right.  That's fair.

 3          So let me ask you, Mr. Wolfe -- let me tell you, I

 4    guess, what I'm seeing on the statute of limitations part.

 5          So I'm reading from the complaint.  And I don't know;

 6    maybe there will be more in the draft that Mr. Sanks is coming

 7    up with now.  But I think we can all agree that there is an

 8    allegation -- this is on or about -- let's see.  It's

 9    paragraph 26:  "Beginning in December of 2020, Plaintiff became

10    aware that Defendant Essential Media Group and their agents

11    were copying, displaying, and distributing the Copywrited Work

12    without authorization."

13          Then, you go on -- and the complaint, later on -- and I

14    think this was added because I think this is the amended

15    complaint.  The original did not have this.  But paragraph 43

16    then adds that plaintiff has learned in 2024 -- let me not omit

17    the most important part:  "In 2024, Plaintiff has learned that

18    Defendants, individually and/or collectively, have illegally

19    copied, displayed, and made available for download the

20    Copywrited Work - without authorization - on the music platform

21    Spotify."

22          So you've pointed out -- and, I think, correctly --

23    that in the event this is what we call an ownership claim,

24    there is really very black-and-white allegations that the

25    plaintiff was aware of this infringement back in 2020.  And

1   with the statute of limitations, that means that he would be

2   outside the range of being able to file suit.

3         The challenge I'm having -- I've looked at a couple of

4   cases, some you've cited, and additional ones beyond those.

5   You've pointed out the *Lott-Johnson* case; I think, *Webster v.*

6   *Abbot*; *Black Box Royalties*, which is probably one of the better

7   ones.  I think all of them stand for the proposition -- and I

8   don't think Mr. Sanks is going to disagree with this -- that

9   when the gravamen of a plaintiff's copyright claim is

10  ownership, because plaintiffs assert that the defendants have

11  no right to copy, sell, distribute, or license, any of the

12  disputed songs, then we are falling within the statute of

13  limitations problem you've pointed out.

14        And look, the *Black Box* case -- and *Webster* actually

15  talks about this -- they point out that there the complaint

16  plaintiff had styled was one of copyright infringement, but it

17  was undisputed that the heart of the case concerned creation

18  and ownership.

19        The challenge I'm having is, if it is not an ownership

20  claim, if that's not the gravamen of the suit here, and it is

21  one purely as to licensing, then having a new discovery, in

22  2024, of infringement would restart or enable to clock the

23  start so that Mr. Sanks's clients would not be boxed out of

24  bringing a suit.

25        The challenge I'm having -- you've advocated and said,

1  this is, at its core, an ownership claim, a freestanding
2  ownership claim; it should be time barred.
3        But when I looked at the complaint carefully, I don't
4  think there's any dispute as to ownership.  I think everyone
5  here agrees that this plaintiff -- Payne has owned these works.
6  They licensed a bunch of them to Essential, and Payne is now
7  saying that in that licensing agreement, one of the works that
8  Essential is utilizing, on Spotify and elsewhere, was not part
9  of the arrangement of licensing between plaintiff and
10 defendants.
11       So if it's a licensing issue, or a sublicensing issue,
12 it wouldn't, I don't think, be, at its core, a copyright
13 ownership issue.
14       So tell me -- because I think, without me finding that
15 it is an ownership issue, your argument doesn't fit.  Right?
16       So I guess the core question is, what kind of claiming
17 are we dealing with here; is it ownership or licensing?  It
18 looks like it's a licensing fight.
19       Tell me how it's ownership.
20       MR. WOLFE:  I don't disagree with you.  I think you're
21 absolutely correct.  I think it's a licensing issue.
22       And Your Honor knows, from the other case you remanded
23 back to state case, that there was an extensive license between
24 their client, Essential.  We have all of these recordings.  And
25 now they claim there's this other one, "It's Alright," that was

```
 1   --

 2          THE COURT:  That wasn't part of the bundle of sticks in

 3   the beginning.

 4          MR. WOLFE:  We disagree with it, but that's for another

 5   day.

 6          And I agree with you.  It's not an ownership claim;

 7   it's a licensing claim.

 8          So how do we reconcile what you've just said with the

 9   pleadings?  And I think it's easy.  I think the limitation to

10   the claim is what was put on Spotify.

11          And remember, since they don't have a timely-registered

12   copywrite, we're down to damages under 504(b), which is actual

13   damages, which comes to --

14          THE COURT:  A thousand bucks, that's what you told me.

15          MR. WOLFE:  I don't even think it's a thousand bucks.

16   I think I paid more for parking than what their claim is.

17          I think at the end of the day, under 504(b), they're

18   entitled to disgorgement of the limited amount of money that we

19   made from Spotify.  I'd be shocked if it's $10.  And that's

20   what we have a federal case about, $10.

21          THE COURT:  Well, let me ask you -- I'm nothing if not

22   pragmatic.  So I agree with you.

23          Let me ask you, Mr. Sanks:  I see you nodding.  I think

24   you agree that that is the core claim; it is a licensing claim.

25   And I will tell you, I'm not going to find there's a
```

```
 1    statute-of-limitation problem.

 2          And this has been very edifying and helpful for the

 3    Court because I think Mr. Wolfe, who's been in this space a

 4    long time, knows that this, at its core, is a licensing fight.

 5    That's what I saw when I remanded the action to state court

 6    too.

 7          So I don't know how much it is in damages, Mr. Sanks.

 8    I certainly can't figure out exactly what the streams are going

 9    to generate.  But it just sounds to me -- Mr. Wolfe's kind of

10    got the sense of the nature of the claim and the value of the

11    claim.  I certainly -- even though I think you're going to have

12    an amended complaint, and I'm happy to give you what you need,

13    14 days, or whatever, to file it.  I'll issue an order today

14    that memorializes what we've done.

15          But I don't want to see us unnecessarily litigate.  You

16    have this -- I think you told me, Mr. Wolfe, if my memory

17    serves me right, it's a straight up dec action in county court,

18    right?

19          MR. WOLFE:  That's correct, Your Honor.

20          THE COURT:  Right.

21          MR. WOLFE:  And so where are we going to go?  They

22    amend, they bring in this and other claims.  Again, we're

23    litigating over --

24          THE COURT:  Well, here's what I want to say about that.

25    And I want to hear, Mr. Sanks, what you think about this.  You
```

```
 1   know, I've sent that back.  They were, for lack of a better
 2   word, first filed.
 3        My suggestion -- again, you tell me what you think.
 4   Before we, you know, go to the mattresses here and litigate
 5   this, certainly, I want there to be a clean, operative
 6   complaint, and I'll give you leave to do that.  But it just
 7   seems that I should wait, that this case should not continue --
 8   put aside that the value of it may not be worth the effort on
 9   the litigation side, but the much cleaner declaration would, I
10   believe, fundamentally, impact this case.  Because if the
11   county or state court finds that this particular work is part
12   of the licensing that was done between the parties, then,
13   certainly, that would impact your ability to recover here.
14   Right?
15        And I don't want to necessarily shut everything down
16   here.  I want you to amend.  But I'm just wondering, should I
17   not stay this case and ask you guys to give me updates every
18   60 days as to what's happening in state court while they figure
19   out, based on the declaratory judgment, if this particular work
20   is part of the license?  Why not do that?  I mean, why do you
21   want to fight on this front?
22        Now, I'm with you, if you had kept it here.  If the
23   original -- if the one that you removed had stayed with me and,
24   as I initially did, I consolidated it, then, of course, I would
25   have had everything, and we would have gone forward.  But now
```

```
 1    that I've spliced it back, because I found there was no

 2    supplemental jurisdictional basis to bring it over, why

 3    wouldn't we amend, and then stay this case, and let that one

 4    play out?  What do you think?

 5             MR. SANKS:  I think the contract that's at the state

 6    court issue is clear.

 7             THE COURT:  Okay.

 8             MR. SANKS:  "It's Alright" is not in the agreement.

 9             THE COURT:  Okay.

10             MR. SANKS:  The reason we brought the state court case

11    to federal court was because they've made that allegation --

12    Mr. Wolfe had sent us an email, which essentially -- in our

13    motion that we filed to move it to federal court, that's what

14    brought the two cases together.

15             THE COURT:  Right, that was the connection.

16             MR. SANKS:  If that wasn't there, we would not have

17    even made the attempt.  We're not trying to duck state court.

18    I know you've basically said we have to pay attorney fees.

19             THE COURT:  Yeah.

20             MR. SANKS:  But it was based on what they did.  It

21    wasn't -- so at this point, to stay this case, essentially,

22    does a disservice to the plaintiff.

23             THE COURT:  How?  Tell me how.  If your state court

24    case is debating whether the core issue -- because remember, if

25    the state court case is to determine whether the licensing
```

1    encompassed the work that is the core of this case, why would I

2    engage in essentially a second track of litigation to figure

3    that -- the answer to that question out here when the state

4    court is looking into it?

5          I mean, to your point, it might be very easy, probably

6    sounds like a straightforward summary judgment over there.  If

7    they're looking at contractual documents -- I mean, correct me

8    if I'm wrong, but it can't be too hard to figure out if the

9    copyrighted work was part of the license or not.  Maybe it

10   requires a little contractual interpretation.  I think they

11   also have a breach of contract over there with the dec action.

12         But why wouldn't I wait there and see if indeed there

13   is a basis for the claim here?  Because what worries me is, I

14   think that the same question, that has been framed before the

15   state court, would have to be answered here also; meaning, you

16   are not going to be able to get any of the copywrite damages on

17   Spotify if the license copied the work that you said they

18   posted.  And I don't want to be now second -- you know, a

19   Monday morning quarterback or second-guessing another judge in

20   the state system.  We're both going to be -- have to answer the

21   same question.  It seems like it would be a waste of judicial

22   economy, no?

23         MR. SANKS:  I don't -- well, first, our amended

24   complaint is up to 53 counts.

25         THE COURT:  Yeah.

1          MR. SANKS:  We had -- I mean, our second amended.

2          THE COURT:  The one that's coming.

3          MR. SANKS:  The one that's coming.  There are other

4    copyrights that we're bringing in.  There's unfair competition

5    counts that we're bringing in, which are not related to that

6    case.

7          THE COURT:  Okay.  Do those counts -- does all of that

8    flow from the determination, though, in state court?  You're

9    telling me there's a separate-and-apart claim that was --

10          MR. SANKS:  And I argue, they're -- just as we took the

11    position --

12          THE COURT:  They're all intertwined.

13          MR. SANKS:  We said they became intertwined when

14    defendant -- or, in the state court case, plaintiff --

15    Mr. Wolfe said "It's Alright" is part of the agreement.

16          THE COURT:  Right.

17          MR. SANKS:  We still disagree.  There is nothing in

18    that contract that supports that.

19          THE COURT:  Okay.  Tell me what, in the amended

20    complaint you're going to file here, is separate and distinct

21    from the question of whether "It's Alright" is part of the

22    license.  I'm going to suspect it flows from that.  That's why

23    I'm concerned.

24          MR. SANKS:  Well -- but I guess my point is, it only

25    flows because they're now making an allegation after we filed a

1    federal case.

2          THE COURT:  Well, I would say this:  I don't know the

3    exact nature of the -- I don't have the state court complaint

4    in front much.

5          I guess -- my only concern is -- I mean, look,

6    Mr. Wolfe doesn't have a motion in front of the Court on this

7    point, so I don't want to sandbag anybody if you want to brief

8    it or argue it.  There are a number of discretionary doctrines

9    that the Court could invoke to stay this case pending that case

10   being litigated.  It hasn't been raised.

11         But I just thought, practically speaking, why wouldn't

12   I put a pause button, let you file the 53-counter that's

13   coming?  But let me see what they say.  Because if "It's

14   Alright" -- I don't think you can tell me that a determination

15   from the state court that's "It's Alright" is included the

16   license wouldn't materially impact this case.  It would.  Maybe

17   not the whole thing, but a big chunk of this case would have --

18   a finding from the state court would guide or at least allow

19   the Court to look at that and see if -- how many counts survive

20   here.  Right?

21         MR. SANKS:  Under what we're bringing, the majority of

22   the counts will survive because they do not pertain to "It's

23   Alright."

24         THE COURT:  So there's a lot of separated stuff that

25   doesn't impact "It's Alright."

 1              So let me ask you, Mr. Wolfe:  I think that I'm not in

 2     a position where I can get, maybe, everyone on the same page.

 3     I would allow -- certainly, I'm going to give Mr. Sanks a

 4     chance to amend.  You have to see it.  I have to see it.  I

 5     don't know what it looks like.

 6              Certainly, if there comes a time when I look at this

 7     second amended complaint, and I feel like we're putting the

 8     cart before the horse, I may ask the parties to either brief

 9     that, or I may expect a motion in that regard by the potential

10     stay.  I think I have quite a bit of discretion.  If I think

11     "It's Alright" would have a material impact on this case, and

12     that's the first file, it just seems like it would be silly to

13     have you guys have to litigate over here and litigate over

14     there.

15              We should pause this one, let that one get resolved,

16     and then come back to this case, decide what "It's Alright"

17     does to here, to this one, depending on what the judge does

18     over there.  And then if there's, as Mr. Sanks says, other

19     claims, we can litigate those.

20              What do you think?  Sequentially, it seems a little

21     odd.

22              MR. WOLFE:  I agree with you.  I have not seen this

23     amended complaint.

24              THE COURT:  Yeah, I don't know.

25              MR. WOLFE:  I don't know what these other copyrights

1    are.

2         THE COURT:  Right.

3         MR. WOLFE:  All I know is, we have a very robust

4    licensing agreement.  It even has a line in there that includes

5    anything else that they own.

6         So we specifically listed a couple of hundred

7    recordings that we licensed from them, and then it goes on to

8    say, and anything else they have.

9         So whatever they have, we believe is going to be

10   subsumed within that agreement that's before Judge Barket.

11   Judge Barket will rule on my motion for declaratory relief,

12   and, if he rules in my favor, this case goes away.

13        So I would agree with you.  Let them amend.  Let me see

14   what it is.  Once I see it, I'll bring the appropriate motions.

15   And I agree with you, it's not appropriate to argue it today.

16   I have plenty of time for that.

17        But again, Your Honor, I want to go back to the

18   practicalities of this.  And I go back to 504(b).  And, Your

19   Honor, I wrote the article for the Florida Bar Journal that

20   I've cited for him.  At the end of the day, we're arguing about

21   nothing, pennies.

22        THE COURT:  Well, let me talk about that second part,

23   because that's another thing we've got to talk about.  We

24   definitely don't want to spend time and money.  We've already

25   got an attorney fee motion that I believe has already been

1    filed.

2          And I want to be clear, Mr. Sanks:  I don't want you to

3    think, for a split second, that -- and I said this in the

4    order, but if I wasn't clear enough in the order, I'll be clear

5    today.  There was no bad faith in the removal.  That's why I

6    pointed out in my citation that bad faith is not required for a

7    award of fees.  It's not to be punitive; it's simply to

8    compensate the party that has had to defend against the

9    removal.

10          I understood your reading of the supplemental

11    jurisdiction statute.  Certainly, I can see why, as we've

12    talked about today, you would have believed there was enough

13    overlap to put these cases together.  So I don't want you to

14    think there's any foul or harm in that.

15          Unfortunately, though, I do believe that exercising

16    discretion was appropriate because, in my read of the

17    supplemental jurisdiction statute, it speaks for itself, that

18    there shouldn't have been removal.  But I don't want you to

19    think that, you know, I made an explicit finding of bad faith

20    because of the sanction issue in state court.

21          Putting that aside, though, the next thing I want to

22    talk about is Mr. Wolf's point on the money.  I mean,

23    certainly, even if the amended complaint's got other works,

24    whatever that may be, the 504(b) issue is a real issue.

25          One thing that I'm going to suggest -- and I think it

```
 1    would be worthwhile -- is whether you stay, or don't stay, if
 2    we get this amended complaint filed here in the next few weeks,
 3    so that we have an operating complaint, I respectfully suggest
 4    that I refer this case for settlement conference to the paired
 5    magistrate judge.  It's cheaper.  No mediation.  Let's get a
 6    judge in here to look at it, and maybe they can work through
 7    these numbers.
 8          And we should do that early.  Because I agree with
 9    Mr. Wolfe; even with a bigger universe of claims in a
10    53-counter, if this is all through 504(b), and we have this
11    kind of damage limitations under the Copyright Act, we should
12    have another jurist step in.  My paired magistrate judge, Judge
13    Louis, is excellent.  She would be happy to set this in the
14    coming months.  You guys can go in, have a good settlement
15    conference.  And at least, even if it doesn't resolve the case,
16    we know the exact value of the case, and that may lead to other
17    conversations, down the line, that might eliminate the need to
18    move this extensively.
19          So I was thinking that we would have a deadline to
20    amend.  I'll ask you, Mr. Sanks, in a moment, what you need.
21    I'll issue an order memorializing everything we've discussed.
22    Then I'll issue a separate order referring you to a settlement
23    conference, and have that be the thing that we deal with next.
24          As you've pointed out, Mr. Wolfe, I don't think anybody
25    now wants to go through the exercise of a potential motion to
```

```
 1   stay, and we've got to brief that, attorney time, attorney
 2   fees.  What a waste.  Why not try to see if -- if this is only
 3   something that's going to be a couple grand, whatever it is, we
 4   should be talking numbers before we waste time filing papers.
 5        Mr. Sanks, are you amenable to just try and have a
 6   settlement conference once you amend the complaint?
 7        MR. SANKS:  Yes, Your Honor.  I really think we need to
 8   do a settlement conference.  The mediator we had selected -- I
 9   don't have an issue doing an early mediation.  The mediator we
10   selected is Mark Stein, outgoing president of the Business Law
11   Section and IP attorney.  He knows the law around this very
12   well.
13        THE COURT:  Well, I'll tell you this:  I think the best
14   thing to do is -- you-all let me know.  Certainly, if you've
15   got someone in the space -- not that my magistrate judge, like
16   me, who have had an education from my time handling these
17   cases, could handle it, I think, very well.
18        But certainly, if it's a dollars-and-cents issue, and
19   you have someone who knows 504, I'm fine with doing an early
20   mediation.  Truthfully, I think the better thing to do is, if
21   the parties would advise me of such, and instead of issuing a
22   scheduling order, or getting into anything else, the Court then
23   would order that the parties, after we go ahead and get this
24   amended complaint filed, to schedule an early mediation and go
25   forward with Stein.
```

```
 1              Do you think, Mr. Wolfe, that may make more sense?

 2     What's your sense of it?

 3              MR. WOLFE:  I just went through a recent mediation

 4     conference with Magistrate Louis.  She's terrific.  And I would

 5     encourage you --

 6              THE COURT:  Let's do it.  It's cost effective.

 7              MR. WOLFE:  It's cost effective.  She's effective.  And

 8     it's a great idea.

 9              THE COURT:  All right.  So here's what we're going to

10     do, guys.  I think we've got a good game plan here.

11              Mr. Sanks, how long do you need?  I know you've done

12     your drafts.  I'm not trying to jam anybody up in the summer.

13     I've got Mr. Wolfe running around, getting ready for me.  He's

14     got other work in front of me, in short order.

15              So how much time do you need to file the amended

16     complaint?

17              MR. SANKS:  Originally, I was going to ask for that

18     other date, the July 6th.  My associate, who's doing all the

19     work on this, just had their first child last week, so he's out

20     for at least two weeks.

21              THE COURT:  So tell me, you need, two, three weeks?

22              MR. SANKS:  Yes, three weeks.

23              THE COURT:  Okay.  I can give you three weeks.  That's

24     fine.  I'm sure there's no objection to that.

25              MR. SANKS:  Thank you, Your Honor.
```

```
 1              THE COURT:  We'll go ahead and give you that.  Tomorrow
 2    is the 7th.  We'll give you the one, two, three -- the 20th.
 3    So I'll set the amended complaint deadline for the 28th.  And
 4    then what I'll do is, I'll issue my order, set that deadline,
 5    and by the same -- and it's not in the same order.  But by
 6    separate order, I'll refer the case to the settlement
 7    conference.  You guys will meet and confer with Magistrate
 8    Judge Louis.  Put something on the calendar that works for
 9    you-all.
10              What I would do is -- what we should think about is,
11    you'll probably get a settlement conference in the next month
12    or so.  And if you guys want to ask, by way of joint motion,
13    that I either stay or extend the responsive deadline -- because
14    I don't want you filing another motion or filing an answer.  We
15    can just pause, right?  We have the amended complaint.  Wait
16    until the settlement conference before you answer or file any
17    other responsive pleading.  I will happily to do that.  It
18    might be easier to do that.
19              What do you think, Mr. Sanks?
20              MR. SANKS:  I agree.  I just have one other request.
21              THE COURT:  Yes, of course.
22              MR. SANKS:  I appreciate what you said, because it was
23    clear, with respect to the attorney fee award.
24              THE COURT:  Yes.
25              MR. SANKS:  I'm going to ask if I could have permission
```

1  to file the motion asking for reconsideration, only from the

2  standpoint, we had -- myself and Mr. Wolfe, we had a similar

3  case, similar situation happened, and it was before the Chief

4  Judge.  And she actually did the same thing.  She remanded it,

5  but she took the position, kind of, what you said today:  We

6  didn't do it to duck state court; therefore, she did not award

7  attorneys' fees.

8          THE COURT:  Okay.

9          MR. SANKS:  I at least would like to get that order,

10  before you, so you could at least evaluate that in view of your

11  order.

12          THE COURT:  Sure, I have no problem.  I'm happy to

13  engage in the reconsideration.

14          I can tell you that, certainly, I would not have any

15  sort of hearing or determination on the motion for fees until

16  the settlement conference is had.  We can put that on the side.

17  Even if I disagree, and I say that a fee award is still

18  appropriate, I'm not going to move on that until we go ahead

19  and give you guys a chance to negotiate and work through a

20  settlement conference.

21          But of course, I'm happy with you filing anything.  I'm

22  happy to read and reconsider anything that you may want me to

23  look at.  So feel free to file that.

24          I think the key for me is just trying to keep the costs

25  low because I don't want to add more on top of the damage,

```
 1   under 504, in terms of fees, which could easily eclipse the

 2   value of the case if we overlitigate it.  And that's what I'm

 3   trying to do, strategically.

 4        So I think we'll give you until the 28th.  I'm happy to

 5   welcome any sort of reconsideration.  I'll take a look at it,

 6   and then I will issue a separate order.

 7        And I welcome that -- once the amended complaint is

 8   filed -- I'm certain that Judge Louis will be able to give you

 9   something in the coming months.  I think that the parties

10   should be prepared, by way of joint motion, to ask the Court to

11   stay or essentially -- I think the best way to do it, actually,

12   would be to stay any responsive pleading or answer until, let's

13   say, 10 days after the parties have completed their settlement

14   conference with the magistrate judge.

15        You know, that may be that best thing, Mr. Wolfe.  So

16   maybe you want to put that together with Mr. Sanks, and just

17   let me know, and I'll have a placeholder so you don't worry

18   about anything, other than the negotiation, before you have to

19   file anything to the amended complaint.  If you file that, I'll

20   grant it and give you whatever you need.

21        I think by the time that Mr. Sanks files the amended

22   complaint, we'll already have a date from Judge Louis as to

23   what you guys could do for the settlement conference.

24        MR. WOLFE:  And the settlement conference is going to

25   be depending upon when the trial in Nealy is --
```

1            THE COURT:  Correct.

2            MR. WOLFE:  -- which I believe it's in the first or

3    second week of --

4            THE COURT:  Yeah, it's something we were talking about.

5    August is kind of what we've been playing around with.

6            Quite frankly, like I said, I may not go forward with

7    it if only because I know the parties may want to do the

8    mediation that they wanted -- you know, after we have the

9    couple of days, I think, in July where I set things that I'm

10   going to hear, I think the goal was -- and I'll listen to you

11   guys then.  I'm tempted, because I heard you-all loud and clear

12   about the possibility of not putting it on a trial calendar

13   until the parties can effectively try to mediate.

14           MR. WOLFE:  Just so you know, that's been set.  We're

15   going to mediate in front of Judge Hanzman.

16           THE COURT:  Oh, wonderful.  So in all likelihood, I

17   would not want you ramping up for trial anyway.  So I can

18   pretty much tell you, I'm not going to rush you to trial.  You

19   can just worry about the hearings and, then, the mediation.

20           MR. WOLFE:  And then I have my trial in front of Judge

21   Gayles in September so -- so much for my summer.

22           THE COURT:  You have a busy few months.  I know my

23   summer is starting to get chopped up quite a bit too.  And

24   hopefully I can tell Judge Louis -- I don't know her summer

25   schedule, but she just the other day got another one of my

```
1    cases, Fair Labor Standard Act case.  She just found a date and
2    time, and worked with the parties really well in finding
3    something that would work for everybody.  I have no doubt
4    she'll be able to do it for you guys too.
5           MR. WOLFE:  Okay.  Thank you, Your Honor.
6           THE COURT:  So Mr. Sanks, anything else?  I think I've
7    got a good game plan here.  I'll issue an order.  I'll hear
8    from you on the reconsideration.  I'll wait to see what date
9    you guys get for the settlement conference, once I issue the
10   settlement conference order for Magistrate Judge Louis.
11          MR. WOLFE:  Thank you, Your Honor.
12          MR. SANKS:  Thank you, Your Honor.
13          The only thing I have is a question for Mr. Wolfe:
14          Since we're scheduling that hearing on July 2nd in
15   state court, would you mind just staying that until after the
16   settlement conference, as well?  Because if we're going to
17   settle, you know we're going to settle this whole --
18          THE COURT:  Oh, if you're going to settle, it should
19   all be done universally.
20          I will tell you, since it's before that judge, I don't
21   want to get involved.
22          MR. SANKS:  We haven't scheduled it yet.
23          THE COURT:  Who knows?  I know scheduling in state
24   court can have its challenges.  Maybe they don't even have that
25   date.
```

1          But look, my view, going back to an earlier point, we

2     want to do it universally.  We're trying to keep it cost

3     effective.  I don't want anybody to spend time and money on

4     behalf of a client when there's a resolution to be had.

5          I certainly think that once you guys get a date, if the

6     date is sometime in July, and it works, it might make more

7     sense for you-all to just postpone or pick a date a little

8     farther out before you go before the county court judge.  I

9     leave it up to you guys to negotiate that.

10         But I'll enter my orders, today or tomorrow, in order

11    to get my dates on the books.  It will help you with everything

12    else.

13         MR. SANKS:  Thank you, Your Honor.

14         MR. WOLFE:  Thank you, Your Honor.

15         THE COURT:  Okay, guys.  Great to see you-all.  Thank

16    you, again, for the briefing.  I'll get those orders out in the

17    next 48 hours or so.

18         MR. WOLFE:  Thank you, Your Honor.  Good to see you.

19         THE COURT:  Good to see you-all.

20      (Court recessed at 11:02 a.m.)

21

22                     C E R T I F I C A T E

23

24      I hereby certify that the foregoing is an

25    accurate transcription of the proceedings in the

1    above-entitled matter.

2

3

     DATE:   June 19, 2024          /s/Ilona Lupowitz
4                                   ILONA LUPOWITZ, RMR, CRR
                                    Official Court Reporter
5                                   United States District Court
                                    Southern District of Florida
6                                   400 North Miami Avenue
                                    Room 11-2
7                                   Miami, Florida 33128
                                    (305) 523-5737
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**$**

**$10** [2] - 16:19, 16:20

**/**

**/s/Ilona** [1] - 35:3

**1**

**1** [2] - 1:8, 12:25
**1,700** [1] - 11:1
**10** [1] - 31:13
**10:21** [1] - 1:6
**11-2** [1] - 1:23, 35:6
**11:02** [2] - 1:6, 34:20
**14** [2] - 3:13, 17:13
**157** [1] - 1:14
**175** [1] - 1:17
**19** [1] - 35:3

**2**

**2020** [2] - 13:9, 13:25
**2024** [6] - 1:5, 3:17, 13:16, 13:17, 14:22, 35:3
**20th** [1] - 29:2
**22** [1] - 4:14
**24-21119** [1] - 2:2
**24-CV-21119-RAR** [1] - 1:2
**2410** [1] - 1:18
**26** [1] - 13:9
**28th** [2] - 29:3, 31:4
**2nd** [1] - 33:14

**3**

**3** [2] - 7:24, 8:10
**30** [1] - 11:10
**305** [2] - 1:24, 35:7
**32789** [1] - 1:15
**33128** [2] - 1:24, 35:7
**33130** [1] - 1:18
**35** [4] - 11:3, 12:7, 12:24, 12:25
**37** [1] - 12:7
**375** [1] - 1:15

**4**

**40** [1] - 12:25
**400** [2] - 1:23, 35:6
**43** [2] - 3:16, 13:15
**48** [1] - 34:17

**5**

**5** [1] - 7:24
**504** [2] - 27:19, 31:1
**504(b** [4] - 16:12, 16:17,

**5:24, 26:10**
  **504(b)** [1] - 24:18
  **523-5737** [2] - 1:24, 35:7
  **53** [2] - 7:15, 20:24
  **53-counter** [2] - 22:12, 26:10

**6**

**6** [1] - 1:5
**60** [1] - 18:18
**600** [1] - 11:1
**65** [1] - 3:12
**68** [1] - 3:12
**6th** [3] - 4:14, 4:15, 28:18

**7**

**7** [1] - 9:2
**7th** [2] - 1:17, 29:2

**8**

**8** [3] - 7:24, 12:13, 12:14
**80,000** [1] - 11:11
**89** [1] - 3:12

**9**

**91** [1] - 5:13
**93** [1] - 3:12

**A**

**a.m** [3] - 1:6, 34:20
**Abbot** [1] - 14:6
**ability** [4] - 5:14, 5:16, 8:3, 18:13
**able** [6] - 4:2, 9:11, 14:2, 20:16, 31:8, 33:4
**above-entitled** [1] - 35:1
**absolutely** [2] - 11:18, 15:21
**accurate** [1] - 34:25
**Act** [2] - 26:11, 33:1
**action** [3] - 17:5, 17:17, 20:11
**activities** [1] - 11:20
**activity** [2] - 8:3, 8:7
**acts** [2] - 3:8, 3:15
**actual** [2] - 8:18, 16:12
**add** [5] - 7:9, 8:15, 8:19, 8:20, 30:25
**added** [1] - 13:14
**additional** [2] - 12:18, 14:4
**address** [5] - 2:15, 3:25, 4:4, 4:18, 10:1
**addressing** [2] - 4:6, 4:23
**adds** [1] - 13:16
**adequacy** [1] - 2:19

**advise** [1] - 27:21
**advocated** [1] - 14:25
**agents** [1] - 13:10
**agree** [14] - 5:2, 5:7, 6:13, 8:1, 12:17, 13:7, 16:6, 16:22, 16:24, 23:22, 24:13, 24:15, 26:8, 29:20
**agreed** [1] - 10:13
**agreement** [5] - 15:7, 19:8, 21:15, 24:4, 24:10
**agrees** [1] - 15:5
**ahead** [4] - 8:25, 27:23, 29:1, 30:18
**al** [2] - 1:7, 2:3
**allegation** [5] - 2:24, 3:21, 13:8, 19:11, 21:25
**allegations** [4] - 2:19, 8:5, 12:15, 13:24
**allege** [1] - 12:14
**alleged** [3] - 8:12, 8:14, 11:20
**allow** [2] - 22:18, 23:3
**Alright** [10] - 15:25, 19:8, 21:15, 21:21, 22:14, 22:15, 22:23, 22:25, 23:11, 23:16
**alternative** [1] - 7:18
**amenable** [1] - 27:5
**amend** [10] - 4:1, 4:7, 4:22, 4:25, 5:22, 7:11, 17:22, 18:16, 19:3, 23:4, 24:13, 26:20, 27:6
**amended** [7] - 3:13, 13:14, 17:12, 20:23, 21:1, 21:19, 23:7, 23:23, 25:23, 26:2, 27:24, 28:15, 29:3, 29:15, 31:7, 31:19, 31:21
**amendment** [6] - 4:20, 7:22, 8:9, 9:20, 9:24, 12:18
**amends** [1] - 10:23
**amount** [1] - 16:18
**answer** [5] - 20:3, 20:20, 29:14, 29:16, 31:12
**answered** [1] - 20:15
**anyway** [1] - 32:17
**apart** [1] - 21:9
**apologize** [1] - 6:1
**APPEARANCES** [1] - 1:11
**appearances** [1] - 2:4
**appreciate** [1] - 29:22
**appropriate** [4] - 24:14, 24:15, 25:16, 30:18
**argue** [3] - 21:10, 22:8, 24:15
**arguing** [2] - 7:18, 24:20
**ARGUMENT** [1] - 1:9
**argument** [3] - 2:21, 4:19, 15:15
**arguments** [2] - 2:17, 9:25
**arrangement** [1] - 15:9
**article** [1] - 24:19

**aside** [3] - 4:21, 18:8, 25:21
**assert** [2] - 3:6, 14:10
**assist** [1] - 7:2
**associate** [1] - 28:18
**attempt** [1] - 19:17
**attorney** [7] - 6:2, 19:18, 24:25, 27:1, 27:11, 29:23
**attorneys'** [1] - 30:7
**attribute** [1] - 6:17
**August** [1] - 32:5
**authority** [1] - 10:3
**authorization** [4] - 3:20, 5:16, 13:12, 13:20
**available** [2] - 3:19, 13:19
**Avenue** [3] - 1:14, 1:23, 35:6
**award** [4] - 25:7, 29:23, 30:6, 30:17
**aware** [2] - 13:10, 13:25

**B**

**bad** [3] - 25:5, 25:6, 25:19
**Bar** [1] - 24:19
**Barket** [2] - 24:10, 24:11
**barred** [1] - 15:2
**Barwick** [4] - 2:3, 2:9, 2:10, 3:23
**based** [2] - 7:8, 18:19, 19:20
**basis** [2] - 19:2, 20:13
**bear** [1] - 6:10
**became** [2] - 13:9, 21:13
**BEFORE** [1] - 1:10
**beginning** [3] - 2:4, 13:9, 16:3
**behalf** [3] - 2:6, 2:9, 34:4
**believes** [1] - 4:19
**benefit** [1] - 11:14
**best** [3] - 27:13, 31:11, 31:15
**bet** [1] - 10:20
**better** [3] - 14:6, 18:1, 27:20
**between** [6] - 7:5, 9:7, 15:9, 15:23, 18:12
**BEUSSE** [1] - 1:14
**Beusse** [1] - 2:6
**beyond** [1] - 14:4
**big** [1] - 22:17
**bigger** [3] - 10:8, 10:9, 26:9
**biggest** [1] - 10:6
**bit** [9] - 3:2, 6:16, 7:4, 8:9, 9:1, 9:5, 12:21, 23:10, 32:23
**black** [1] - 13:24
**Black** [2] - 14:6, 14:14
**black-and-white** [1] - 13:24
**blueprint** [1] - 7:10
**books** [1] - 34:11

**Box** [2] - 14:6, 14:14
**boxed** [1] - 14:23
**breach** [1] - 20:11
**brief** [4] - 5:12, 22:7, 23:8, 27:1
**briefing** [1] - 34:16
**bring** [4] - 11:12, 17:22, 19:2, 24:14
**bringing** [4] - 14:24, 21:4, 21:5, 22:21
**Brothers** [1] - 10:8
**brought** [3] - 3:9, 19:10, 19:14
**Browne** [1] - 10:22
**bucks** [2] - 16:14, 16:15
**bunch** [3] - 11:13, 12:4, 15:6
**bundle** [1] - 16:2
**burden** [1] - 6:13
**Business** [1] - 27:10
**busy** [1] - 32:22
**button** [1] - 22:12
**BWP** [2] - 5:8, 5:9
**BY** [1] - 1:19

## C

**calendar** [2] - 29:8, 32:12
**California** [1] - 10:6
**cannot** [2] - 4:19, 9:23
**care** [1] - 9:20
**carefully** [1] - 15:3
**cart** [1] - 23:8
**Case** [1] - 2:2
**CASE** [1] - 1:2
**case** [40] - 3:5, 5:8, 5:9, 10:5, 10:7, 10:25, 11:2, 11:5, 14:5, 14:14, 14:17, 15:22, 15:23, 16:20, 18:7, 18:10, 18:17, 19:3, 19:10, 19:21, 19:24, 19:25, 20:1, 21:6, 21:14, 22:1, 22:9, 22:16, 22:17, 23:11, 23:16, 24:12, 26:4, 26:15, 26:16, 29:6, 30:3, 31:2, 33:1
**cases** [5] - 14:4, 19:14, 25:13, 27:17, 33:1
**category** [2] - 3:4, 3:10
**Central** [1] - 10:6
**centric** [1] - 2:18
**cents** [1] - 27:18
**certain** [1] - 31:8
**certainly** [19] - 4:21, 4:25, 5:6, 8:18, 12:11, 12:17, 12:20, 17:8, 17:11, 18:5, 18:13, 23:3, 23:6, 25:11, 25:23, 27:14, 27:18, 30:14, 34:5
**certify** [1] - 34:24
**cetera** [1] - 7:9

**challenge** [4] - 7:7, 14:3, 14:19, 14:25
**challenges** [1] - 33:24
**chance** [2] - 23:4, 30:19
**cheaper** [1] - 26:5
**Chief** [1] - 30:3
**child** [1] - 28:19
**chopped** [1] - 32:23
**chunk** [1] - 22:17
**circuit** [1] - 12:20
**Circuit** [2] - 3:5, 8:2
**citation** [1] - 25:6
**cited** [4] - 5:8, 11:4, 14:4, 24:20
**claim** [21] - 3:9, 4:7, 6:14, 7:23, 12:14, 13:23, 14:9, 14:20, 15:1, 15:2, 15:25, 16:6, 16:7, 16:10, 16:16, 16:24, 17:10, 17:11, 20:13, 21:9
**claiming** [1] - 15:16
**claims** [5] - 3:6, 6:3, 17:22, 23:19, 26:9
**clarify** [1] - 8:18
**clean** [2] - 9:4, 18:5
**cleaner** [1] - 18:9
**clear** [7] - 8:2, 19:6, 25:2, 25:4, 29:23, 32:11
**Cleveland** [1] - 10:21
**client** [2] - 15:24, 34:4
**clients** [1] - 14:23
**clock** [1] - 14:22
**collectable** [1] - 11:15
**collectible** [1] - 11:16
**collectively** [3] - 3:18, 5:14, 13:18
**color** [1] - 11:4
**coming** [6] - 13:6, 21:2, 21:3, 22:13, 26:14, 31:9
**committed** [3] - 4:3, 5:15, 5:21
**company** [4] - 11:8, 11:9, 11:12, 11:22
**company's** [1] - 11:23
**compensate** [1] - 25:8
**competition** [1] - 21:4
**complaint** [31] - 2:23, 2:25, 3:2, 3:11, 3:13, 3:17, 4:3, 4:7, 8:18, 13:5, 13:13, 13:15, 14:15, 15:3, 17:12, 18:6, 20:24, 21:20, 22:3, 23:7, 23:23, 26:2, 26:3, 27:6, 27:24, 28:16, 29:3, 29:15, 31:7, 31:19, 31:22
**complaint's** [1] - 25:23
**completed** [1] - 31:13
**concern** [2] - 3:22, 22:5
**concerned** [2] - 14:17, 21:23
**concerning** [1] - 8:16

**concerns** [1] - 9:21
**conclusory** [2] - 5:17, 8:10
**conduct** [3] - 5:15, 5:21, 6:18
**confer** [1] - 29:7
**conference** [17] - 26:4, 26:15, 26:23, 27:6, 27:8, 28:4, 29:7, 29:11, 29:16, 30:16, 30:20, 31:14, 31:23, 31:24, 33:9, 33:10, 33:16
**confused** [1] - 4:15
**connection** [1] - 19:15
**consider** [1] - 8:17
**consolidated** [1] - 18:24
**Constantine** [1] - 10:22
**continue** [1] - 18:7
**contract** [3] - 19:5, 20:11, 21:18
**contractual** [2] - 20:7, 20:10
**control** [4] - 6:7, 9:5, 9:8, 12:10
**controlling** [1] - 6:6
**conversations** [1] - 26:17
**copied** [3] - 3:18, 13:19, 20:17
**copy** [1] - 14:11
**copying** [1] - 13:11
**copyright** [5] - 10:6, 12:11, 14:9, 14:16, 15:12
**Copyright** [1] - 26:11
**copyrighted** [1] - 20:9
**copyrights** [3] - 11:1, 21:4, 23:25
**copywrite** [2] - 16:12, 20:16
**Copywrited** [3] - 3:19, 13:11, 13:20
**core** [7] - 15:1, 15:12, 15:16, 16:24, 17:4, 19:24, 20:1
**correct** [6] - 4:1, 11:18, 15:21, 17:19, 20:7, 32:1
**correctly** [1] - 13:22
**cost** [3] - 28:6, 28:7, 34:2
**costs** [1] - 30:24
**counsel** [1] - 2:5
**count** [2] - 7:16, 8:22
**Count** [2] - 7:24, 8:10
**country** [1] - 14:9
**counts** [7] - 6:23, 7:15, 20:24, 21:5, 21:7, 22:19, 22:22
**county** [3] - 17:17, 18:11, 34:8
**couple** [5] - 2:16, 14:3, 24:6, 27:3, 32:9
**course** [4] - 8:17, 18:24, 29:21, 30:21
**Court** [13] - 1:21, 1:22, 2:1, 10:11, 17:3, 22:6, 22:9,

22:19, 27:22, 31:10, 34:20, 35:4, 35:5
**COURT** [62] - 1:1, 2:2, 2:8, 2:14, 4:11, 4:17, 5:6, 6:11, 7:14, 7:17, 7:20, 8:24, 9:13, 9:16, 10:4, 10:8, 10:10, 10:14, 10:17, 12:6, 12:9, 13:2, 16:2, 16:14, 16:21, 17:20, 17:24, 19:7, 19:9, 19:15, 19:19, 19:23, 20:25, 21:2, 21:7, 21:12, 21:16, 21:19, 22:2, 22:24, 23:24, 24:2, 24:22, 27:13, 28:6, 28:9, 28:21, 28:23, 29:1, 29:21, 29:24, 30:8, 30:12, 32:1, 32:4, 32:16, 32:22, 33:6, 33:18, 33:23, 34:15, 34:19
**court** [24] - 6:12, 17:5, 17:17, 18:11, 18:18, 19:6, 19:10, 19:11, 19:13, 19:17, 19:23, 19:25, 20:4, 20:15, 21:8, 21:14, 22:3, 22:15, 22:18, 25:20, 30:6, 33:15, 33:24, 34:8
**covered** [1] - 9:25
**creates** [1] - 11:13
**creation** [1] - 14:17
**CRR** [2] - 1:20, 35:4
**cured** [2] - 4:20, 9:2
**current** [1] - 7:12

## D

**damage** [2] - 26:11, 30:25
**damages** [4] - 16:12, 16:13, 17:7, 20:16
**DARRYL** [1] - 1:4
**DATE** [1] - 35:3
**date** [8] - 28:18, 31:22, 33:1, 33:8, 33:25, 34:5, 34:6, 34:7
**dates** [1] - 34:11
**days** [4] - 17:13, 18:18, 31:13, 32:9
**deadline** [4] - 26:19, 29:3, 29:4, 29:13
**deal** [3] - 2:18, 12:2, 26:23
**dealing** [2] - 12:12, 15:17
**deals** [1] - 12:12
**debating** [1] - 19:24
**dec** [2] - 17:17, 20:11
**December** [1] - 13:9
**decide** [2] - 4:23, 23:16
**declaration** [1] - 18:9
**declaratory** [2] - 18:19, 24:11
**defend** [2] - 10:18, 25:8
**Defendant** [1] - 13:10
**defendant** [9] - 3:14, 5:18,

7:6, 8:6, 8:16, 11:9, 11:15, 11:16, 21:14
**defendant's** [1] - 8:13
**DEFENDANT'S** [1] - 1:9
**defendants** [12] - 2:13, 2:16, 3:7, 3:9, 3:15, 3:17, 5:13, 8:11, 11:1, 14:10, 15:10
**Defendants** [2] - 1:8, 13:18
**DEFENDANTS** [1] - 1:16
**defense** [2] - 2:21, 9:23
**definitely** [3] - 6:11, 9:7, 24:24
**delineate** [1] - 7:4
**detail** [1] - 8:15
**detailed** [1] - 11:5
**determination** [3] - 21:8, 22:14, 30:15
**determine** [1] - 19:25
**direct** [5] - 5:19, 8:4, 8:6, 11:21, 12:16
**directly** [2] - 8:7, 11:20
**disagree** [5] - 14:8, 15:20, 16:4, 21:17, 30:17
**disagreed** [1] - 10:11
**discovery** [5] - 6:5, 6:9, 6:21, 7:2, 14:21
**discretion** [2] - 23:10, 25:16
**discretionary** [1] - 22:8
**discussed** [1] - 26:21
**discussion** [1] - 12:10
**disgorgement** [1] - 16:18
**dismiss** [1] - 2:15
**DISMISS** [1] - 1:9
**dismissed** [1] - 7:24
**displayed** [2] - 3:19, 13:19
**displaying** [1] - 13:11
**dispute** [1] - 15:4
**disputed** [1] - 14:12
**disservice** [1] - 19:22
**distinct** [1] - 21:20
**distribute** [1] - 14:11
**distributing** [1] - 13:11
**distribution** [2] - 11:23, 11:24
**District** [5] - 1:22, 1:22, 10:6, 35:5, 35:5
**DISTRICT** [3] - 1:1, 1:1, 1:10
**DIVISION** [1] - 1:2
**Docket** [2] - 3:13, 4:14
**doctrines** [1] - 22:8
**documents** [1] - 20:7
**dollars** [1] - 27:18
**dollars-and-cents** [1] - 27:18
**done** [4] - 17:14, 18:12, 28:11, 33:19

**doubt** [1] - 33:3
**down** [4] - 11:3, 16:12, 18:15, 26:17
**download** [2] - 3:19, 13:19
**draft** [3] - 7:14, 8:8, 13:6
**drafts** [1] - 28:12
**duck** [2] - 19:17, 30:6

## E

**early** [4] - 26:8, 27:9, 27:19, 27:24
**easier** [1] - 29:18
**easiest** [1] - 2:22
**easily** [1] - 31:1
**easy** [2] - 16:9, 20:5
**eclipse** [1] - 31:1
**economy** [2] - 5:6, 20:22
**edifying** [1] - 17:2
**education** [1] - 27:16
**effective** [4] - 28:6, 28:7, 34:3
**effectively** [1] - 32:13
**effort** [1] - 18:8
**either** [2] - 23:8, 29:13
**element** [3] - 9:8, 9:9, 12:10
**Eleventh** [2] - 3:5, 8:1
**eliminate** [1] - 26:17
**elsewhere** [1] - 15:8
**email** [2] - 4:14, 19:12
**enable** [1] - 14:22
**encompassed** [1] - 20:1
**encourage** [2] - 12:21, 28:5
**end** [2] - 16:17, 24:20
**engage** [2] - 20:2, 30:13
**engaged** [2] - 3:15, 5:19
**England** [1] - 1:14
**ensure** [1] - 5:16
**enter** [1] - 34:10
**Enterprises** [1] - 2:11
**entitled** [2] - 16:18, 35:1
**Entry** [1] - 3:13
**essential** [2] - 11:7, 11:8
**Essential** [8] - 2:9, 6:7, 7:5, 9:7, 13:10, 15:6, 15:8, 15:24
**ESSENTIAL** [1] - 1:7
**essentially** [4] - 19:12, 19:21, 20:2, 31:11
**et** [3] - 1:7, 2:3, 7:9
**evaluate** [1] - 30:10
**event** [1] - 13:23
**exact** [3] - 7:10, 22:3, 26:16
**exactly** [2] - 6:5, 17:8
**example** [6] - 3:16, 5:11, 5:13, 6:21, 6:22, 8:5
**excellent** [2] - 9:13, 26:13
**exercise** [1] - 26:25
**exercising** [1] - 25:15
**expect** [1] - 23:9

**explain** [2] - 10:21, 12:13
**explanation** [1] - 5:10
**explicit** [1] - 25:19
**expressed** [1] - 11:7
**extend** [1] - 29:13
**extensive** [1] - 15:23
**extensively** [1] - 26:18

## F

**failure** [1] - 7:4
**Fair** [1] - 33:1
**fair** [2] - 7:20, 13:2
**faith** [3] - 25:5, 25:6, 25:19
**falling** [1] - 14:12
**far** [1] - 5:18
**favor** [2] - 12:25, 24:12
**federal** [4] - 16:20, 19:11, 19:13, 22:1
**fee** [3] - 24:25, 29:23, 30:17
**fees** [6] - 19:18, 25:7, 27:2, 30:7, 30:15, 31:1
**few** [3] - 9:20, 26:2, 32:22
**fight** [3] - 15:18, 17:4, 18:21
**figure** [7] - 3:14, 3:21, 4:2, 17:8, 18:18, 20:2, 20:8
**file** [14] - 4:8, 4:12, 7:13, 14:2, 17:13, 21:20, 22:12, 23:12, 28:15, 29:16, 30:1, 30:23, 31:19
**filed** [9] - 2:16, 10:2, 18:2, 19:13, 21:25, 25:1, 26:2, 27:24, 31:8
**files** [1] - 31:21
**filing** [4] - 27:4, 29:14, 30:21
**financial** [6] - 8:4, 8:6, 8:13, 8:16, 11:21, 11:22
**fine** [3] - 7:20, 27:19, 28:24
**finer** [1] - 5:3
**finger** [1] - 3:24
**first** [5] - 18:2, 20:23, 23:12, 28:19, 32:2
**fit** [1] - 15:15
**five** [1] - 3:14
**flaw** [1] - 4:1
**fleshed** [1] - 9:10
**fleshing** [1] - 6:19
**FLORIDA** [1] - 1:1
**Florida** [8] - 1:4, 1:15, 1:18, 1:22, 1:24, 24:19, 35:5, 35:7
**flow** [1] - 21:8
**flows** [2] - 21:22, 21:25
**followed** [1] - 11:4
**FOR** [2] - 1:13, 1:16
**foregoing** [1] - 34:24
**forward** [3] - 18:25, 27:25, 32:6
**foul** [1] - 25:14

**four** [1] - 3:14
**fourth** [1] - 3:4
**framed** [2] - 2:25, 20:14
**frankly** [3] - 6:17, 11:14, 32:6
**free** [1] - 30:23
**freestanding** [1] - 15:1
**front** [7] - 3:11, 18:21, 22:4, 22:6, 28:14, 32:15, 32:20
**fundamentally** [1] - 18:10

## G

**game** [3] - 9:19, 28:10, 33:7
**Gayles** [1] - 32:21
**generate** [1] - 17:9
**glad** [2] - 10:14, 10:17
**goal** [1] - 32:10
**grand** [1] - 27:3
**grant** [1] - 31:20
**granted** [1] - 4:22
**gravamen** [2] - 14:9, 14:20
**great** [2] - 28:8, 34:15
**GROUP** [1] - 1:7
**Group** [2] - 2:10, 13:10
**guess** [4] - 4:5, 13:4, 15:16, 21:24, 22:5
**guessing** [2] - 11:17, 20:19
**guidance** [2] - 12:19, 12:22
**guide** [1] - 22:18
**guys** [14] - 18:17, 23:13, 26:14, 28:10, 29:7, 29:12, 30:19, 31:23, 32:11, 33:4, 33:9, 34:5, 34:9, 34:15

## H

**hair** [1] - 11:10
**handle** [1] - 27:17
**handling** [1] - 27:16
**Hanzman** [1] - 32:15
**happily** [1] - 29:17
**happy** [6] - 17:12, 26:13, 30:12, 30:21, 30:22, 31:4
**hard** [2] - 12:3, 20:8
**harm** [1] - 25:14
**hear** [3] - 17:25, 32:10, 33:7
**heard** [1] - 32:11
**hearing** [3] - 4:9, 30:15, 33:14
**hearings** [1] - 32:19
**heart** [1] - 14:17
**heightened** [1] - 6:15
**held** [1] - 6:22
**help** [2] - 5:7, 34:11
**helpful** [1] - 17:2
**helps** [1] - 7:17
**hereby** [1] - 34:24
**Honor** [19] - 2:12, 4:5, 9:12, 10:2, 11:7, 11:18, 12:24,

15:22, 17:19, 24:17, 24:19, 27:7, 28:25, 33:5, 33:11, 33:12, 34:13, 34:14, 34:18
**HONORABLE** [1] - 1:10
**Honorable** [1] - 1:21
**hope** [2] - 4:25, 7:11
**hopeful** [1] - 8:9
**hopefully** [1] - 32:24
**hoping** [1] - 4:12
**horse** [1] - 23:8
**hours** [1] - 34:17
**hundred** [1] - 24:6

## I

**idea** [2] - 7:8, 28:8
**identify** [1] - 5:23
**II** [2] - 1:10, 1:21
**illegally** [2] - 3:18, 13:18
**ILONA** [2] - 1:20, 35:4
**impact** [5] - 18:10, 18:13, 22:16, 22:25, 23:11
**important** [1] - 13:17
**incident** [1] - 5:19
**included** [1] - 22:15
**includes** [1] - 24:4
**indeed** [1] - 20:12
**indirect** [2] - 11:22, 11:24
**individual** [1] - 7:16
**individually** [4] - 3:18, 5:14, 7:6, 13:18
**individuals** [3] - 10:24, 11:6, 11:19
**infringement** [10] - 5:19, 5:20, 6:23, 7:23, 8:14, 9:9, 12:11, 13:25, 14:16, 14:22
**infringements** [1] - 8:12
**infringing** [5] - 5:15, 5:21, 8:3, 8:7, 11:20
**inside** [1] - 10:10
**instead** [1] - 27:21
**interest** [4] - 8:4, 8:13, 11:21, 11:22
**interests** [2] - 8:6, 8:16
**interpretation** [1] - 20:10
**intertwined** [2] - 21:12, 21:13
**invoke** [1] - 22:9
**involved** [2] - 11:20, 33:21
**IP** [1] - 27:11
**issue** [26] - 2:24, 4:24, 7:23, 9:3, 9:16, 9:17, 12:2, 15:11, 15:13, 15:15, 15:21, 17:13, 19:6, 19:24, 25:20, 25:24, 26:21, 26:22, 27:9, 27:18, 29:4, 31:6, 33:7, 33:9
**issues** [2] - 4:23, 9:6
**issuing** [1] - 27:21
**itself** [2] - 4:14, 25:17

## J

**jam** [1] - 28:12
**Johnson** [1] - 14:5
**joint** [2] - 29:12, 31:10
**joke** [1] - 10:10
**Journal** [1] - 24:19
**judge** [9] - 20:19, 23:17, 26:5, 26:6, 26:12, 27:15, 31:14, 33:20, 34:8
**Judge** [1] - 24:10, 24:11, 26:12, 29:8, 30:4, 31:8, 31:22, 32:15, 32:20, 32:24, 33:10
**JUDGE** [1] - 1:10
**judgment** [3] - 6:24, 18:19, 20:6
**judicial** [2] - 5:6, 20:21
**July** [5] - 4:15, 28:18, 32:9, 33:14, 34:6
**jump** [1] - 2:23
**June** [3] - 1:5, 4:14, 35:3
**jurisdiction** [2] - 25:11, 25:17
**jurisdictional** [1] - 19:2
**jurist** [1] - 26:12

## K

**keep** [3] - 10:18, 30:24, 34:2
**kept** [1] - 18:22
**key** [1] - 30:24
**kind** [8] - 5:17, 7:3, 12:15, 15:16, 17:9, 26:11, 30:5, 32:5
**Klein** [2] - 2:10
**Kleins** [1] - 3:23
**knows** [5] - 15:22, 17:4, 27:11, 27:19, 33:23

## L

**Labor** [1] - 33:1
**lack** [1] - 18:1
**language** [4] - 6:1, 6:2, 8:10, 12:11
**last** [3] - 10:2, 12:6, 28:19
**Latin** [1] - 11:2
**LAW** [1] - 1:17
**law** [3] - 11:4, 11:25, 27:11
**Law** [1] - 27:10
**lead** [1] - 26:16
**learned** [3] - 3:17, 13:16, 13:17
**least** [12] - 3:2, 4:13, 5:2, 5:9, 5:23, 8:10, 12:19, 22:18, 26:15, 28:20, 30:9, 30:10
**leave** [7] - 4:1, 4:22, 6:12, 9:21, 10:23, 18:6, 34:9

**legal** [2] - 2:20, 8:11
**liability** [3] - 8:22, 9:4, 12:16
**liable** [1] - 6:25
**license** [7] - 14:11, 15:23, 18:20, 20:9, 20:17, 21:22, 22:16
**licensed** [2] - 15:6, 24:7
**licensing** [13] - 14:21, 15:7, 15:9, 15:11, 15:17, 15:18, 15:21, 16:7, 16:24, 17:4, 18:12, 19:25, 24:4
**likelihood** [1] - 32:16
**limitation** [2] - 16:9, 17:1
**limitations** [9] - 2:21, 4:19, 9:18, 9:23, 12:3, 13:4, 14:1, 14:13, 26:11
**limited** [1] - 16:18
**line** [3] - 12:20, 24:4, 26:17
**listed** [1] - 24:6
**listen** [1] - 32:10
**litigate** [5] - 17:15, 18:4, 23:13, 23:19
**litigated** [1] - 22:10
**litigating** [2] - 10:5, 17:23
**litigation** [4] - 11:13, 12:4, 18:9, 20:2
**LLC** [1] - 1:7
**look** [9] - 12:23, 14:14, 22:5, 22:19, 23:6, 26:6, 30:23, 31:5, 34:1
**looked** [3] - 12:6, 14:3, 15:3
**looking** [3] - 3:11, 20:4, 20:7
**looks** [2] - 15:18, 23:5
**Lott** [1] - 14:5
**Lott-Johnson** [1] - 14:5
**loud** [1] - 32:11
**Louis** [7] - 26:13, 28:4, 29:8, 31:8, 31:22, 32:24, 33:10
**low** [1] - 30:25
**lumped** [1] - 6:20
**LUPOWITZ** [2] - 1:20, 35:4
**Lupowitz** [1] - 35:3

## M

**Magistrate** [3] - 28:4, 29:7, 33:10
**magistrate** [4] - 26:5, 26:12, 27:15, 31:14
**maintained** [1] - 4:1
**majority** [1] - 22:21
**Maluma** [1] - 11:2
**manager** [1] - 7:9
**managers** [1] - 6:6
**Mark** [1] - 27:10
**material** [1] - 23:11
**materially** [1] - 22:16

**matter** [4] - 2:3, 4:18, 4:22, 35:1
**mattresses** [1] - 18:4
**mean** [7] - 3:25, 18:20, 20:5, 20:7, 21:1, 22:5, 25:22
**meaning** [1] - 20:15
**means** [1] - 14:1
**Media** [3] - 2:10, 5:9, 13:10
**MEDIA** [1] - 1:7
**mediate** [2] - 32:13, 32:15
**mediation** [7] - 26:5, 27:9, 27:20, 27:24, 28:3, 32:8, 32:19
**mediator** [2] - 27:8, 27:9
**meet** [1] - 29:7
**member** [2] - 6:6, 7:9
**memorializes** [1] - 17:14
**memorializing** [1] - 26:21
**memory** [1] - 17:16
**MIAMI** [2] - 1:2, 1:17
**Miami** [6] - 1:4, 1:18, 1:23, 1:24, 35:6, 35:7
**might** [5] - 7:2, 20:5, 26:17, 29:18, 34:6
**mind** [1] - 33:15
**minute** [1] - 4:21
**moment** [1] - 26:20
**Monday** [1] - 20:19
**money** [4] - 16:18, 24:24, 25:22, 34:3
**month** [1] - 29:11
**months** [3] - 26:14, 31:9, 32:22
**morning** [5] - 2:8, 2:12, 2:14, 2:17, 20:19
**most** [1] - 13:17
**motion** [14] - 2:15, 7:25, 8:21, 19:13, 22:6, 23:9, 24:11, 24:25, 26:25, 29:12, 29:14, 30:1, 30:15, 31:10
**MOTION** [1] - 1:9
**motions** [1] - 24:14
**move** [3] - 19:13, 26:18, 30:18
**MR** [62] - 2:6, 2:12, 4:5, 4:12, 5:4, 5:25, 7:12, 7:15, 7:18, 8:20, 9:12, 9:14, 10:2, 10:5, 10:9, 10:13, 10:16, 10:21, 12:8, 12:24, 15:20, 16:4, 16:15, 17:19, 17:21, 19:5, 19:8, 19:10, 19:16, 19:20, 20:23, 21:1, 21:3, 21:10, 21:13, 21:17, 21:24, 22:21, 23:22, 23:25, 24:3, 27:7, 28:3, 28:7, 28:17, 28:22, 28:25, 29:20, 29:22, 29:25, 30:9, 31:24, 32:2, 32:14, 32:20, 33:5, 33:11, 33:12, 33:22, 34:13, 34:14, 34:18

**multiple** [2] - 3:6, 3:7
**music** [3] - 3:20, 11:2, 13:20
**must** [1] - 8:3

## N

**named** [1] - 7:6
**nature** [2] - 17:10, 22:3
**Nealy** [6] - 10:8, 10:9, 10:10, 10:12, 10:16, 11:25
**necessarily** [2] - 3:14, 18:15
**need** [15] - 4:24, 6:14, 8:5, 9:7, 9:8, 9:9, 12:15, 17:12, 26:17, 26:20, 27:7, 28:11, 28:15, 28:21, 31:20
**needs** [1] - 6:18
**negotiate** [2] - 30:19, 34:9
**negotiation** [1] - 31:18
**new** [1] - 14:21
**New** [1] - 1:14
**next** [5] - 25:21, 26:2, 26:23, 29:11, 34:17
**night** [2] - 10:2, 12:6
**nine** [1] - 10:20
**NO** [1] - 1:2
**North** [2] - 1:23, 35:6
**nothing** [3] - 16:21, 21:17, 24:21
**notice** [2] - 4:15, 10:3
**nuance** [1] - 5:10
**number** [1] - 22:8
**numbers** [2] - 26:7, 27:4

## O

**objection** [1] - 28:24
**obtained** [1] - 8:11
**odd** [1] - 23:21
**OF** [1] - 1:1
**Official** [2] - 1:21, 35:4
**omissions** [2] - 3:8, 3:15
**omit** [1] - 13:16
**ON** [1] - 1:9
**once** [6] - 6:9, 24:14, 27:6, 31:7, 33:9, 34:5
**one** [23] - 2:19, 3:3, 3:9, 4:25, 7:1, 9:6, 11:19, 14:6, 14:16, 14:21, 15:7, 15:25, 18:23, 19:3, 21:2, 21:3, 23:15, 23:17, 25:25, 29:2, 29:20, 32:25
**ones** [2] - 14:4, 14:7
**operating** [1] - 26:3
**operative** [1] - 18:5
**opinion** [2] - 11:3, 12:5
**opportunity** [1] - 4:7
**opted** [1] - 4:8
**ORAL** [1] - 1:9

**Orchard** [9] - 2:11, 3:24, 7:5, 7:6, 8:16, 8:22, 9:3, 9:7, 9:15
**Orchards** [1] - 10:23
**order** [21] - 4:13, 4:14, 4:16, 5:12, 17:13, 25:4, 26:21, 26:22, 27:22, 27:23, 28:14, 29:4, 29:5, 29:6, 30:9, 30:11, 31:6, 33:7, 33:10, 34:10
**Order** [1] - 2:1
**orders** [2] - 34:10, 34:16
**original** [2] - 13:15, 18:23
**originally** [1] - 28:17
**outgoing** [1] - 27:10
**outside** [1] - 14:2
**overlap** [1] - 25:13
**overlitigate** [1] - 31:2
**own** [1] - 24:5
**owned** [1] - 15:5
**owner** [1] - 11:22
**owners** [1] - 11:12
**ownership** [12] - 13:23, 14:10, 14:18, 14:19, 15:1, 15:2, 15:4, 15:13, 15:15, 15:17, 15:19, 16:6

## P

**P.A** [1] - 1:17
**page** [6] - 7:24, 9:2, 11:3, 12:7, 12:24, 23:2
**Pages** [1] - 1:8
**pages** [2] - 12:7, 12:25
**paid** [1] - 16:16
**paired** [2] - 26:4, 26:12
**papers** [1] - 27:4
**paragraph** [5] - 3:12, 3:16, 5:13, 13:9, 13:15
**Park** [1] - 1:15
**parking** [1] - 16:16
**parse** [3] - 5:1, 6:24, 12:16
**parsing** [1] - 6:23
**part** [5] - 5:13, 13:4, 13:17, 15:8, 16:2, 18:11, 18:20, 20:9, 21:15, 21:21, 24:22
**partial** [1] - 6:24
**particular** [2] - 2:19, 3:12, 4:24, 18:11, 18:19
**particularly** [1] - 9:18
**parties** [9] - 18:12, 23:8, 27:21, 27:23, 31:9, 31:13, 32:7, 32:13, 33:2
**party** [1] - 25:8
**patent** [2] - 6:2, 6:3
**Paul** [1] - 2:10
**pause** [3] - 22:12, 23:15, 29:15
**pay** [1] - 19:18
**PAYNE** [1] - 1:4
**Payne** [3] - 2:3, 15:5, 15:6

**pays** [1] - 11:23
**pending** [1] - 22:9
**pennies** [1] - 24:21
**per** [1] - 7:16
**permission** [1] - 29:25
**pertain** [1] - 22:22
**pick** [1] - 34:7
**placeholder** [1] - 31:17
**Plaintiff** [3] - 1:5, 13:9, 13:17
**plaintiff** [3] - 3:17, 11:1, 13:16, 13:25, 14:16, 15:5, 15:9, 19:22, 21:14
**PLAINTIFF** [1] - 1:13
**plaintiff's** [2] - 2:5, 14:9
**plaintiffs** [2] - 2:7, 14:10
**plan** [2] - 9:19, 28:10, 33:7
**platform** [2] - 3:20, 13:20
**play** [1] - 19:4
**playing** [1] - 32:5
**plead** [1] - 11:19
**pleading** [11] - 2:18, 3:4, 3:10, 4:2, 6:12, 6:15, 9:25, 11:6, 12:13, 29:17, 31:12
**pleadings** [2] - 4:22, 16:9
**pleads** [1] - 12:1
**plenty** [1] - 24:16
**PLLC** [1] - 1:14
**point** [13] - 5:3, 5:11, 6:4, 7:19, 9:1, 10:22, 14:15, 19:21, 20:5, 21:24, 22:7, 25:22, 34:1
**pointed** [8] - 7:24, 9:2, 9:6, 13:22, 14:5, 14:13, 25:6, 26:24
**pointing** [1] - 7:2
**position** [4] - 5:20, 21:11, 23:2, 30:5
**possibility** [1] - 32:12
**posted** [1] - 20:18
**postpone** [1] - 34:7
**potential** [2] - 23:9, 26:25
**poured** [1] - 3:1
**practicalities** [1] - 24:18
**practically** [1] - 22:11
**pragmatic** [1] - 16:22
**prefer** [1] - 5:4
**prepared** [1] - 31:10
**president** [1] - 27:10
**pretty** [4] - 5:17, 12:10, 12:19, 32:18
**primarily** [1] - 11:4
**problem** [5] - 3:3, 3:21, 14:13, 17:1, 30:12
**proceedings** [1] - 34:25
**profit** [2] - 8:12, 11:23
**profitable** [1] - 11:23
**profited** [1] - 8:7
**progress** [1] - 7:22

**prominent** [1] - 11:9
**proper** [2] - 5:16, 11:9
**proposition** [1] - 14:7
**prove** [1] - 11:19
**punitive** [1] - 25:7
**purely** [1] - 14:21
**put** [10] - 3:24, 5:2, 5:12, 16:10, 18:8, 22:12, 25:13, 29:8, 30:16, 31:16
**puts** [1] - 5:20
**putting** [5] - 4:21, 8:8, 23:7, 25:21, 32:12

## Q

**quarterback** [1] - 20:19
**quite** [6] - 3:2, 6:17, 11:14, 23:10, 32:6, 32:23
**quote** [3] - 3:3, 3:6, 5:13
**quote-unquote** [1] - 3:3

## R

**raise** [1] - 6:12
**raised** [3] - 2:21, 9:25, 22:10
**Rama** [2] - 2:10, 3:23
**ramping** [1] - 32:17
**range** [1] - 14:2
**rather** [1] - 11:17
**re** [1] - 12:1
**re-pleads** [1] - 12:1
**read** [4] - 3:16, 12:19, 25:16, 30:22
**reading** [2] - 13:5, 25:10
**ready** [1] - 28:13
**real** [1] - 25:24
**really** [10] - 2:9, 3:23, 3:24, 10:14, 11:12, 12:7, 12:9, 13:24, 27:7, 33:2
**reason** [1] - 19:10
**recent** [1] - 28:3
**recessed** [1] - 34:20
**reconcile** [1] - 16:8
**reconsider** [1] - 30:22
**reconsideration** [4] - 30:1, 30:13, 31:5, 33:8
**recordings** [3] - 11:11, 15:24, 24:7
**recover** [1] - 18:13
**refer** [2] - 26:4, 29:6
**referring** [1] - 26:22
**regard** [1] - 23:9
**registered** [1] - 16:11
**related** [1] - 21:5
**relationship** [1] - 9:6
**relationships** [2] - 7:4, 7:8
**relief** [1] - 24:11
**reliving** [1] - 10:11
**remanded** [3] - 15:22, 17:5,

30:4
**remedied** [1] - 9:24
**remember** [3] - 8:14, 16:11, 19:24
**removal** [3] - 25:5, 25:9, 25:18
**removed** [1] - 18:23
**removing** [1] - 8:23
**REPORTED** [1] - 1:19
**Reporter** [2] - 1:21, 35:4
**represent** [2] - 2:13, 11:2
**represented** [1] - 11:9
**representing** [1] - 11:10
**request** [1] - 29:20
**required** [1] - 25:6
**requirements** [2] - 8:4, 11:25
**requires** [1] - 20:10
**resolution** [1] - 4:4
**resolve** [1] - 26:15
**resolved** [1] - 23:15
**respect** [2] - 9:14, 29:23
**respectfully** [1] - 26:3
**response** [3] - 8:15, 8:17, 9:3
**responsible** [3] - 3:8, 5:23, 6:23
**responsive** [3] - 29:13, 29:17, 31:12
**restart** [1] - 14:22
**RICHARD** [1] - 1:16
**Richard** [1] - 2:12
**RMR** [2] - 1:20, 35:4
**robust** [1] - 24:3
**Rodolfo** [1] - 1:21
**RODOLFO** [1] - 1:10
**role** [1] - 8:13
**Room** [2] - 1:23, 35:6
**Royalties** [1] - 14:6
**RUIZ** [1] - 1:10
**Ruiz** [1] - 1:21
**rule** [1] - 24:11
**Rule** [2] - 12:13, 12:14
**rules** [1] - 24:12
**running** [2] - 10:20, 28:13
**rush** [1] - 32:18

**S**

**sanction** [1] - 25:20
**sandbag** [1] - 22:7
**Sanks** [25] - 2:6, 2:8, 2:22, 9:20, 10:1, 10:22, 11:5, 12:1, 12:17, 13:6, 14:8, 16:23, 17:7, 17:25, 23:3, 23:18, 25:2, 26:20, 27:5, 28:11, 29:19, 31:16, 31:21, 33:6
**SANKS** [37] - 1:13, 1:14, 2:6, 4:5, 4:12, 5:4, 5:25, 7:12, 7:15, 7:18, 8:20, 9:12,

9:14, 19:5, 19:8, 19:10, 19:16, 19:20, 20:23, 21:1, 21:3, 21:10, 21:13, 21:17, 21:24, 22:21, 27:7, 28:17, 28:22, 28:25, 29:20, 29:22, 29:25, 30:9, 33:12, 33:22, 34:13
**Sanks's** [1] - 14:23
**satisfied** [1] - 9:19
**satisfy** [1] - 11:24
**saw** [3] - 10:4, 12:6, 17:5
**schedule** [2] - 27:24, 32:25
**scheduled** [1] - 33:22
**scheduling** [3] - 27:22, 33:14, 33:23
**SE** [1] - 1:17
**second** [10] - 5:12, 9:9, 20:2, 20:18, 20:19, 21:1, 23:7, 24:22, 25:3, 32:3
**second-guessing** [1] - 20:19
**Section** [1] - 27:11
**see** [18] - 3:3, 4:9, 13:8, 16:23, 17:15, 20:12, 22:13, 22:19, 23:4, 24:13, 24:14, 25:11, 27:2, 33:8, 34:15, 34:18, 34:19
**seeing** [1] - 13:4
**selected** [2] - 27:8, 27:10
**sell** [1] - 14:11
**seminal** [1] - 3:5
**sense** [5] - 7:5, 17:10, 28:1, 28:2, 34:7
**sent** [2] - 18:1, 19:12
**separate** [5] - 21:9, 21:20, 26:22, 29:6, 31:6
**separate-and-apart** [1] - 21:9
**separated** [2] - 7:15, 22:24
**September** [1] - 32:21
**sequentially** [1] - 23:20
**serves** [1] - 17:17
**set** [5] - 26:13, 29:3, 29:4, 32:9, 32:14
**settle** [3] - 33:17, 33:18
**settlement** [16] - 26:4, 26:14, 26:22, 27:6, 27:8, 29:6, 29:11, 29:16, 30:16, 30:20, 31:13, 31:23, 31:24, 33:9, 33:10, 33:16
**shares** [1] - 3:22
**Sharon** [1] - 2:10
**shocked** [1] - 16:19
**short** [1] - 28:14
**shotgun** [4] - 2:25, 3:3, 3:4, 3:10
**shut** [1] - 18:15
**side** [2] - 18:9, 30:16
**silly** [1] - 23:12
**similar** [2] - 30:2, 30:3

**simply** [2] - 8:11, 25:7
**situation** [1] - 30:3
**six** [1] - 10:19
**someone** [4] - 6:22, 10:18, 27:15, 27:19
**sometime** [1] - 34:6
**songs** [1] - 14:12
**sort** [2] - 30:15, 31:5
**sound** [1] - 11:4
**sounds** [4] - 7:8, 9:19, 17:9, 20:6
**SOUTHERN** [1] - 1:1
**Southern** [1] - 1:22, 35:5
**space** [2] - 17:3, 27:15
**speaking** [1] - 22:11
**speaks** [1] - 25:17
**specific** [2] - 3:15, 8:21
**specifically** [1] - 24:6
**specifying** [1] - 3:7
**spend** [2] - 24:24, 34:3
**spliced** [1] - 19:1
**split** [1] - 25:3
**Spotify** [6] - 3:20, 13:21, 15:8, 16:10, 16:19, 20:17
**stage** [1] - 7:3
**stand** [1] - 14:7
**standard** [2] - 6:15
**Standard** [1] - 33:1
**standards** [1] - 12:13
**standpoint** [1] - 30:2
**start** [3] - 4:5, 8:15, 14:23
**started** [1] - 11:10
**starting** [1] - 32:23
**starts** [2] - 12:8, 12:9
**state** [23] - 6:4, 6:14, 15:23, 17:5, 18:11, 18:18, 19:5, 19:10, 19:17, 19:23, 19:25, 20:3, 20:15, 20:20, 21:8, 21:14, 22:3, 22:15, 22:18, 25:20, 30:6, 33:15, 33:23
**States** [2] - 1:22, 35:5
**STATES** [2] - 1:1, 1:10
**statute** [11] - 2:21, 4:18, 9:18, 9:23, 12:2, 13:4, 14:1, 14:12, 17:1, 25:11, 25:17
**statute-of-limitation** [1] - 17:1
**statute-of-limitations** [1] - 9:23
**stay** [11] - 18:17, 19:3, 19:21, 22:9, 23:10, 26:1, 27:1, 29:13, 31:11, 31:12
**stayed** [1] - 18:23
**staying** [1] - 33:15
**Stein** [2] - 27:10, 27:25
**STENOGRAPHICALLY** [1] - 1:19
**step** [2] - 8:24, 26:12
**sticks** [1] - 16:2

**still** [2] - 21:17, 30:17
**straight** [1] - 17:17
**straightforward** [1] - 20:6
**strategically** [1] - 31:3
**streams** [1] - 17:8
**Street** [1] - 1:17
**structure** [1] - 2:23
**struggling** [1] - 4:3
**stuff** [1] - 22:24
**styled** [1] - 14:16
**subject** [1] - 7:21
**sublicensing** [1] - 15:11
**subsumed** [1] - 24:10
**sued** [1] - 11:1
**sufficiency** [1] - 9:25
**sufficiently** [1] - 12:14
**suggest** [2] - 25:25, 26:3
**suggestion** [1] - 18:3
**suit** [3] - 14:2, 14:20, 14:24
**Suite** [2] - 1:15, 1:18
**summary** [2] - 6:24, 20:6
**summer** [4] - 28:12, 32:21, 32:23, 32:24
**supervise** [3] - 5:15, 8:3, 9:5
**supervision** [1] - 9:8
**supplemental** [4] - 10:3, 19:2, 25:10, 25:17
**supports** [1] - 21:18
**Supreme** [1] - 10:11
**survive** [2] - 22:19, 22:22
**suspect** [1] - 21:22
**system** [1] - 20:20

**T**

**talks** [1] - 14:15
**technically** [1] - 10:19
**tempted** [1] - 32:11
**terms** [2] - 6:16, 31:1
**terrific** [1] - 28:4
**Terry** [1] - 2:6
**TERRY** [1] - 1:13
**THE** [64] - 1:10, 1:13, 1:16, 2:2, 2:8, 2:14, 4:11, 4:17, 5:6, 6:11, 7:14, 7:17, 7:20, 8:24, 9:13, 9:16, 10:4, 10:8, 10:10, 10:14, 10:17, 12:6, 12:9, 13:2, 16:2, 16:14, 16:21, 17:20, 17:24, 19:7, 19:9, 19:15, 19:19, 19:23, 20:25, 21:2, 21:7, 21:12, 21:16, 21:19, 22:2, 22:24, 23:24, 24:2, 24:22, 27:13, 28:6, 28:9, 28:21, 28:23, 29:1, 29:21, 29:24, 30:8, 30:12, 32:1, 32:4, 32:16, 32:22, 33:6, 33:18, 33:23, 34:15, 34:19
**therefore** [1] - 30:6

**they've** [1] - 19:11
**thinking** [2] - 6:12, 26:19
**thousand** [2] - 16:14, 16:15
**three** [9] - 6:6, 10:19, 10:24, 11:6, 28:21, 28:22, 28:23, 29:2
**timely** [1] - 16:11
**timely-registered** [1] - 16:11
**TO** [1] - 1:9
**today** [10] - 2:15, 4:6, 4:23, 12:12, 17:13, 24:15, 25:5, 25:12, 30:5, 34:10
**together** [5] - 6:20, 8:8, 19:14, 25:13, 31:16
**tomorrow** [2] - 29:1, 34:10
**took** [2] - 21:10, 30:5
**top** [1] - 30:25
**touch** [1] - 4:6
**track** [2] - 12:21, 20:2
**transcription** [1] - 34:25
**trial** [5] - 31:25, 32:12, 32:17, 32:18, 32:20
**Truthfully** [1] - 27:20
**try** [6] - 6:24, 12:13, 12:21, 27:2, 27:5, 32:13
**trying** [5] - 19:17, 28:12, 30:24, 31:3, 34:2
**two** [6] - 6:8, 8:4, 19:14, 28:20, 28:21, 29:2
**Twombly** [1] - 6:14

## U

**under** [6] - 12:13, 16:12, 16:17, 22:21, 26:11, 31:1
**understood** [1] - 25:10
**undisputed** [1] - 14:17
**unfair** [1] - 21:4
**unfortunately** [1] - 25:15
**UNITED** [2] - 1:1, 1:10
**United** [2] - 1:22, 35:5
**universally** [2] - 33:19, 34:2
**universe** [1] - 26:9
**unnecessarily** [1] - 17:15
**unnecessary** [2] - 11:13, 12:5
**unquote** [1] - 3:3
**up** [9] - 7:15, 9:4, 13:7, 17:17, 20:24, 28:12, 32:17, 32:23, 34:9
**updates** [1] - 18:17
**urge** [3] - 10:22, 11:17, 12:1
**utilizing** [1] - 15:8

## V

**value** [4] - 17:10, 18:8, 26:16, 31:2
**versus** [2] - 2:3, 12:16

**viable** [2] - 6:14, 12:14
**vicarious** [7] - 5:19, 7:23, 8:22, 9:3, 9:9, 12:10, 12:16
**view** [2] - 30:10, 34:1
**votes** [1] - 10:19
**vs** [1] - 1:6

## W

**wait** [4] - 18:7, 20:12, 29:15, 33:8
**wants** [1] - 26:25
**Warner** [1] - 10:8
**waste** [3] - 20:21, 27:2, 27:4
**Webster** [2] - 14:5, 14:14
**week** [2] - 28:19, 32:3
**weeks** [5] - 26:2, 28:20, 28:21, 28:22, 28:23
**Weiland** [1] - 3:5
**welcome** [2] - 31:5, 31:7
**white** [1] - 13:24
**whole** [4] - 11:13, 12:4, 22:17, 33:17
**Winter** [1] - 1:15
**Wolf's** [2] - 8:21, 25:22
**Wolfe** [21] - 2:12, 2:14, 3:22, 4:19, 5:20, 7:23, 9:17, 13:3, 17:3, 17:16, 19:12, 21:15, 22:6, 23:1, 26:9, 26:24, 28:1, 28:13, 30:2, 31:15, 33:13
**WOLFE** [29] - 1:16, 1:17, 2:12, 10:2, 10:5, 10:9, 10:13, 10:16, 10:21, 12:8, 12:24, 15:20, 16:4, 16:15, 17:19, 17:21, 23:22, 23:25, 24:3, 28:3, 28:7, 31:24, 32:2, 32:14, 32:20, 33:5, 33:11, 34:14, 34:18
**Wolfe's** [1] - 17:9
**wonderful** [1] - 32:16
**wondering** [1] - 18:16
**word** [1] - 18:2
**worded** [1] - 8:10
**works** [5] - 15:5, 15:7, 25:23, 29:8, 34:6
**worried** [1] - 5:17
**worries** [2] - 3:10, 20:13
**worry** [2] - 31:17, 32:19
**worth** [1] - 18:8
**worthwhile** [1] - 26:1
**writing** [1] - 6:3
**written** [1] - 6:19
**wrote** [1] - 24:19

## Y

**years** [1] - 11:10
**you-all** [7] - 5:7, 27:14,

29:9, 32:11, 34:7, 34:15, 34:19

## Z

**zero** [1] - 10:20